**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

STEPHEN BUSHANSKY,

      Plaintiff,

  v.                                  Civil Action 2:25-cv-1068
                                       Judge Algenon L. Marbley
                                       Magistrate Judge Kimberly A. Jolson

STEVEN J. SELL, et al.,

      Defendants.

**OPINION & ORDER**

Defendants' Motion to Transfer Venue (Doc. 8) is before the Court. For the following reasons, the Motion is **GRANTED**. This case is **TRANSFERRED** to the United States District Court for the Western District of Texas, Austin Division.

**I.    BACKGROUND**

Plaintiff Stephen Bushansky filed this stockholder derivative action on behalf of nominal Defendant agilon health, inc. ("Agilon") against former and current members of Agilon's board of directors (the "Board") and Agilon's current and former executives (collectively the "Individual Defendants"). (Doc. 1; *see also id.* at ¶¶ 18–37 (naming the following as Individual Defendants: Steven J. Sell, Timothy S. Bensley, Jeffery A. Schwaneke, Silvana Battaglia, Sharad Mansukani, Diana L. McKenzie, Karen McLoughlin, Ronald A. Williams, Ravi Sachdev, William Wulf, Michelle A. Gourdine, Muchael L. Smith, Clay Richards, Richard J. Schnall, Derek L. Strum, Glenn Sobotka, Priscilla Kasenchak, and private equity firm CD&R Vector Holdings, L.P. ("CD&R"))).

As told by Plaintiff, Agilon is a healthcare technology company that "integrates data analytics, care coordination, and administrative support for independent physician groups" and "serves as the intermediary between its associated physician groups delivering medical service and Medicare insurers reimbursing those services." (*Id.* at ¶ 2). Agilon derives its revenue from "the spread between payments received from insurers and amounts paid to physician groups." (*Id.*). Plaintiff has been an Agilon stockholder since its initial public offering in 2021. (*Id.* at ¶ 16).

Though an in-depth description of Plaintiff's allegations is not necessary, he generally alleges that the Individual Defendants made, disseminated, or approved false, misleading, or incomplete statements that were designed to artificially inflate the price of Agilon's stock in violation of Section 10(b), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, of the Exchange Act. (*See id.* at §§ 156–58, 229–38). Plaintiff alleges further violations of Sections 14(a), 21D, and 20(a) of the Exchange Act. (*Id.* at §§ 239–247). And he asserts that the Individual Defendants and CD&R breached the fiduciary duty owed to Agilon and its stockholders, aided and abetted such breaches, and were unjustly enriched. (*Id.* at §§ 256–86 (also alleging a derivative *Brophy* claim against certain Defendants)).

Shortly after Plaintiff initiated this action, Defendants filed a Motion to Change Venue (Doc. 8). The Motion seeks to transfer the case to the Western District of Texas, where a related consolidated putative securities class action and a consolidated derivative action are pending. (*See generally id.*). Plaintiff opposes the transfer, and the matter is ready for review. (Docs. 8, 28, 31).

## II. STANDARD

Defendants pursue transfer of the case under first-to-file doctrine or 28 U.S.C. § 1404(a).

To begin, "[t]he first-to-file rule is a well-established doctrine that encourages comity among federal courts of equal rank." *Zide Sport Shop of Ohio, Inc. v. Ed Tobergte Assocs., Inc.*,

16 F. App'x 433, 437 (6th Cir. 2001). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should generally proceed to judgment.'" *Id.* (citation omitted). When considering whether the first-to file rule applies, courts consider: "(1) the chronology of the events, (2) the similarity of the parties involved, and (3) the similarity of the issues or claims at stake." *Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6tj Cir. 2016). Plus, "courts must also evaluate whether any equitable concerns weigh against applying it." *Reese on Behalf of Fifth Third Bancorp v. Carmichael*, No. 1:20-CV-886, 2021 WL 1121036, at *2 (S.D. Ohio Mar. 24, 2021); *see also Aero Advanced Paint Tech., Inc. v. Int'l Aero Prods., LLC*, 351 F. Supp. 3d 1067, 1072 (S.D. Ohio 2018) (noting factors weighing against application of the rule include extraordinary circumstances, inequitable conduct, bad faith, anticipatory lawsuits, and forum shopping). "If a court finds the first-to-file rule applies, then the court presiding over the second-filed case has four options: (1) dismiss the case without prejudice; (2) transfer the second-filed case to the district in which the first-filed case is pending; (3) stay proceedings in the second-filed case while the first filed court decides whether to retain or relinquish jurisdiction; or (4) proceed without interruption." *Bowe v. Cross River Bank*, No. 1:22-CV-00721, 2024 WL 1049820, at *6 (S.D. Ohio Mar. 11, 2024) (citation omitted).

The other rule at play here, 28 U.S.C. § 1404(a), is similar. It states: "For the convenience of parties . . . in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Defendants bear the burden of showing a change of venue is warranted. *Slate Rock Const. Co. Ltd. V. Admiral Ins. Co.*, No. 2:10-cv-1031, 2011 WL 3841691, at *5 (S.D. Ohio Aug. 30, 2011) (citing *Jamhour v. Scottsdale, Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio

3

2002)).

Up front, a court must determine "whether the action 'might have been brought' in the transferee court." *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849 (S.D. Ohio 2007). This probes whether the potential transferee court has subject matter jurisdiction, whether venue is proper, and whether the defendant is amendable to process issuing out of the transferee court. *Schoenfeld v. Mercedes-Benz USA, LLC*, No. 3:20-CV-159, 2021 WL 3579016, at *1 (S.D. Ohio Aug. 13, 2021) (citation omitted). Next, a court evaluates convenience to parties, as well as other public and private interest factors. *See Kay*, 494 F. Supp. 2d at 849. Private interests include:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 850 ((quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)); *see also W. Am. Ins. Co. v. Potts*, 908 F.2d 974 (Table) (6th Cir. 1990). As for the public-interest inquiry, it "may include the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. Of Tex.*, 571 U.S. 49, 62 n.6 (2013) (internal quotation omitted). Finally, the court considers whether the transfer is "in the interest of justice[.]" 28 U.S.C. § 1404(a). This includes consideration of judicial economy and the desire to avoid inconsistent judgments. *North v. McNamara*, 47 F. Supp. 3d 635, 648 (S.D. Ohio 2014).

Ultimately, the Court has broad discretion to transfer a case under either the first-to-file rule or Section 1404. *See, e.g.*, *NCR Corp. v. First Fin. Computer Servs., Inc.*, 492 F. Supp. 2d 864, 866 (S.D. Ohio 2007); *Power Distributors, LLC v. Snowdog LLC*, No. 2:25-CV-643, 2025

WL 3187130, at *3 (S.D. Ohio Nov. 14, 2025).

### III. DISCUSSION

Before evaluating the merits of Defendants' Motion, the Court briefly discusses the procedural history of the related cases in the United States District Court for the Western District of Texas.

### A. Western District of Texas Litigation

Two cases pending before the Honorable Judge David A. Ezra in the Western District of Texas matter here. The first is *In re agilon health, inc. Securities Litigation*, No. 1:24-cv-0297 (W.D. Tex.), a consolidated putative federal securities class action on behalf of all persons who purchased Agilon common stock during the alleged class period ("Texas Securities Action"). *See id.* at Docs. 14, 36. In November 2024, the defendants to that action—which includes almost all Defendants named here—filed three motions to dismiss the consolidated class action complaint. *See id.* at Docs. 51, 53, 54; (*see also* Doc. 8-1 at 5–111 (consolidated complaint)).

Separately, in November 2024, the Western District of Texas consolidated two shareholder derivative actions, which both assert Securities Exchange Act claims against the Defendants to this action (the "Consolidated Derivative Action"). *See In re agilon health, inc. Shareholder Derivative Litigation*, No. 1:24-cv-00531 (W.D. Tex.); (*see also* Doc. 8-1 at 113–293 (original complaints of the consolidated cases)). The consolidation order applies to "each related shareholder derivative action involving the same, or substantially the same, allegations and claims, and arising out of the same, or substantially the same, transactions or occurrences as the Consolidated Derivative Action, that is subsequently filed in, removed to, reassigned to, or transferred" to the Western District of Texas. *In re agilon health, inc. Shareholder Derivative Litigation*, No. 1:24-cv-00531, at Doc. 25. Also important, the Consolidated Derivative Action

5

was stayed while the court considered the motions to dismiss in the Texas Securities Action. *Id.* at Docs. 12, 25. So, little has happened in that case since November 2024.

In August 2025, the Western District of Texas granted in part and denied in part the motions to dismiss the Texas Securities Action. *In re agilon health, inc. Securities Litigation*, No. 1:24-cv-0297, at Doc. 63; *see also id.* at Docs. 66, 67 (motions for reconsideration and clarification). Then, in December 2025, defendants in the Consolidated Derivative Action filed a motion to lift the case stay. *In re agilon health, inc. Shareholder Derivative Litigation*, No. 1:24-cv-00531, at Doc. 26. That motion remains pending, though it appears that the request to lift the stay is unopposed. *Id.* at Doc. 27 ("Plaintiffs do not oppose Defendants' underlying request for the stay to be lifted.").

Against this backdrop, Defendants ask that this case be transferred to the Western District of Texas, presumably to be consolidated with the Consolidated Derivative Action. (Doc. 8). They argue transfer is justified both under the first-to-file rule and 28 U.S.C. § 1404. Ultimately, the Court finds that Defendants meet their burden under either doctrine.

**B.  Transfer Under the First-to-File Rule**

As stated, when applying the first-to-file rule, the Court examines the chronology of events in the pertinent cases, the similarity of the parties involves, and the similarity of the issues or claims. *Reese*, 2021 WL 1121036, at *2. After that, the Court evaluates equitable concerns weighing against applying the rule. *Id.*

The chronology factor is simple. It asks which of the "overlapping cases" was filed first. *Baatz*, 814 F.3d at 790. Here, the two cases eventually merged into the Consolidated Derivative Action were filed in May 2024 and October 2024. (*See* Doc. 8-1 at 113–293). Those cases were consolidated in November 2024. *In re agilon health, inc. Shareholder Derivative Litigation*, No.

6

1:24-cv-00531, at Doc. 25. This case was filed after all that, in September 2025. (Doc. 1). So, the chronology of events favors transfer.

The second factor—similarity of parties—asks whether the parties in the relevant actions "'substantially overlap,' even if they are not identical." *Baatz*, 814 F.3d at 790 (citation omitted). Again, this factor supports transfer. As Defendants say, every defendant named in this action was named in one of the cases joined in the Consolidated Derivative Action. (*Compare* Doc. 1 *with* Doc. 8-1 at 113–293). It is true that the pleadings are not yet set in the Consolidated Derivative Action, *see In re agilon health, inc. Shareholder Derivative Litigation*, No. 1:24-cv-00531, at Docs. 26 (requesting that plaintiffs be ordered to designate an operative complaint), 27 (alternatively requesting that plaintiffs be permitted to file an amended complaint). But current party overlap easily satisfies similarity. *Cf. Reese*, 2021 WL 1121036, at *3 (finding similarity of parties where more than half of the defendants were named in all the relevant cases); *Aero Advanced Paint Tech., Inc.*, 351 F. Supp. 3d at 1071 (finding similarity where the only difference between the cases was some additional parties). And there is little reason to believe the parties to either action will substantially change.

Finally, the issues in the cases are clearly similar too. Both this action and the Consolidated Derivative Action assert substantially similar Exchange Act and related claims against Agilon's Board and officers for nearly identical conduct. (*Compare* Doc. 1 *with* Doc. 8-1 at 113–293). And though this case alleges additional breach of fiduciary duty and unjust enrichment claims against CD&R, those claims are based on the same underlying events and theories. *Cf. Reese*, 2021 WL 1121036, at *3 (finding similarity where "the underlying issues are identical"); *Aero Advanced Paint Tech., Inc.*, 351 F. Supp. 3d at 1071–72 (finding cases sufficiently similar even when one

case asserted additional claims where "the factual allegations and central theories of liability are the same in both actions"). Consequently, this factor, too, points towards transfer.

Plaintiff does not dispute the above analysis. (*See* Doc. 28 at 10–13). Rather, Plaintiff submits that equitable considerations justify not applying the first-to-file rule. (*Id.*). Plaintiff initially contends that the rule is inapposite because the Consolidated Derivative Action is stayed and dormant. (Doc. 28 at 11–12). For this reason, he says the concerns underlying the first-to-file rule—preventing duplicative litigation and conflicting results and promoting comity—are not relevant. (*Id.* (citing *Colby v. VisionWorks of Am., Inc.*, No. 1:25-CV-00387-JLT-SAB, 2025 WL 2937437 (E.D. Cal. Oct. 16, 2025), *report and recommendation adopted*, No. 1:25-CV-00387 JLT SAB, 2025 WL 3208818 (E.D. Cal. Nov. 17, 2025))). Yet even to the extent Plaintiff's argument has merit, it will likely be moot very soon. As noted, an unopposed motion to lift the stay on the Consolidated Derivative Action is fully briefed. *In re agilon health, inc. Shareholder Derivative Litigation*, No. 1:24-cv-00531, at Docs. 26, 27, 28. Consequently, it cannot be said that the Consolidated Derivative Action is dormant or not actively being developed.

Further, Plaintiff argues that the location of Agilon's headquarters guides against the application of the first-to-file rule. (Doc. 28 at 12–13). Specifically, the cases that make up the Consolidated Derivative Action were filed in the Western District of Texas, in part, because Agilon's headquarters was there. (*See* Doc. 8-1 at 122, 238). But in December 2024, Agilon moved its corporate headquarters to Westerville, Ohio in this District. (Doc. 28 at 9). Because the Complaint's allegations "implicate the location of" Defendants' headquarters, says Plaintiff, efficiency weighs in favor of litigating this case in the same place. (*Id.* at 12–13). However, efficiency concerns tilt the scale in the other direction. Given the semblance of events and issues underlying this case and the Consolidated Derivative Action, "it is highly likely that there will be

8

a substantial overlap in discovery and briefing in the two cases." *Huellemeier on behalf of Teva Pharm. Indus. Ltd. Emp. Stock Purchase Plan v. Teva Pharm. Indus. Ltd.*, No. 1:17-CV-485, 2017 WL 5523149, at *6 (S.D. Ohio Nov. 17, 2017). As discussed in more detail below, it would be less efficient for the parties and the courts involved if these cases were in separate forums. Given such overlap, the threat of inconsistent rulings looms.

Finally, Plaintiff accuses Defendants of engaging in forum shopping because they seek to litigate this case away from the District containing Agilon's headquarters. (*Id.* at 13). The Court does not share that assessment. This appears to be a case where Defendants have simply "taken steps to ensure that all the issues are litigated in a single case" given the obvious overlap between this action and the Consolidated Derivative Action. *Baatz*, 814 F.3d at 798 (citation omitted). Nothing in the record suggests that an improper motive, especially since the events giving rise to Plaintiff's Complaint occurred before Agilon's move. *Cf. id.* (noting that a transfer's tactical advantage does not necessarily suggest an improper motive).

Taken together, all three first-to-file factors are satisfied. And the equities considered do not weigh in favor of ignoring the rule. *See also Baatz*, 814 F.3d at 798 ("[D]eclining to apply the first-to-file rule should be done rarely[.]"). Rather, the prudential and comity concerns rooted in the doctrine win out. As a result, Defendants have met their burden to show transfer is justified under the first-to-file rule. But even if this were not true, 28 U.S.C. § 1404 would dictate the same outcome.

### C. Transfer Under 28 U.S.C. § 1404

Preliminarily, the parties do not dispute that venue would be proper in the Western District of Texas under 28 U.S.C. § 1391(b), nor do they say that court lacks subject matter jurisdiction or personal jurisdiction over Defendants. (*See generally* Docs. 8, 28, 31); *see L.M.H. v. Red Roof*

9

*Inns*, No. 2:24-CV-1823, 2025 WL 961720, at *4 n.3 (S.D. Ohio Mar. 31, 2025) (assuming the transfer venue is proper where no party says otherwise). As such, the Court turns to the relevant considerations under Section 1404(a).

### A. Private Factors

The parties' arguments about the private factors considered for transfer center on the convenience of witnesses and parties and the location of and access to evidence.

To start, the parties have diametrically opposed views of how the Court should evaluate convenience. Defendants assert that it is more convenient and resource-efficient for everyone if this case is litigated in Texas. (Doc. 8 at 15–16). Because of the high potential for overlapping evidence between this case and the Consolidate Derivative Action, transfer would minimize the burden of litigating essentially the same case in two different places. (*Id.*). And Defendants argue that Plaintiff's choice of forum is entitled to diminished deference because Plaintiff Bushansky lives in New York, not Ohio. (*Id.* at 16–17). Plaintiff counters that it will be more convenient if this case is litigated in Ohio where Agilon's headquarters is because that is where much of the documentary evidence and many witnesses will be. (Doc. 28 at 14–15). Plaintiff asserts that all involved would be burdened by transferring this case "1,250 miles away to a District with no ongoing connection with" Agilon. (*Id.* at 15).

While Plaintiff's arguments about the impact of Agilon's location on witnesses and evidence may have more merit elsewhere, this case does not exist in a vacuum. It is clear that this action and the Consolidated Derivative Action have overlapping issues. It is also apparent that the Consolidated Derivative Action is not imminently going away. "Having one district court preside over several actions all related to the same set of events is clearly preferable to the witnesses." *Bui v. Armes*, No. 3:14CV428, 2014 WL 4983670, at *5 (N.D. Ohio Oct. 6, 2014); *see also Ltd. Serv.*

10

*Corp. v. M/V APL PERU*, No. 2:09-CV-1025, 2010 WL 2105362, at *6 (S.D. Ohio May 25, 2010) ("The parties and witnesses can more easily coordinate their schedules to minimize duplicative meetings, interviews, depositions, etc[.]"). For example, rather than requiring witnesses to testify in two forums, they can testify in one. *Id.*

Even more, the convenience differential for Plaintiff personally is minimal. He lives in New York. (*See* Doc. 1-2). No matter if this case were in Ohio or Texas, it would not be where he resides. Indeed, this Court has found in such cases, Plaintiff's choice of forum is given less consideration. *Pac. Life Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 1:15-CV-416, 2016 WL 223683, at *5 (S.D. Ohio Jan. 19, 2016) (quoting *Kay*, 494 F. Supp. 2d at 850); *Bush v. Honda Dev. & Mfg. of Am.*, No. 2:24-CV-4114, 2025 WL 1635294, at *7 (S.D. Ohio June 9, 2025) ("Plaintiff's choice of forum is not entitled to deference in this instance given that he does not reside in the Southern District of Ohio."). While the Court does not completely overlook Plaintiff's forum choice, it weighs less in favor of denying transfer than if Plaintiff were a resident of this District.

As for the location of evidence, though Plaintiff bemoans the burden of producing corporate documents in Texas, the reality of electronic discovery methods sufficiently minimizes this burden. *See CCFI Companies, LLC v. Spicher*, No. 3:24-CV-220, 2024 WL 5077766, at *3 (S.D. Ohio Dec. 11, 2024) (finding the ability to share documents electronically across forums "largely negates this factor" and commenting "modern litigation largely takes place through the use of discovery platforms, file sharing systems, or simply emailing collections of PDFs" (citation omitted)).

On balance, private factors support transfer.

11

### B. Public Factors and the Interests of Justice

Finally, the public factors and interests of justice also weigh towards transfer. Simply put, transfer to the Western District of Texas will result in the efficient use of judicial time and resources and avoid inconsistent rulings. Judge Ezra has been presiding over the Consolidated Derivative Action and the Texas Securities Action for over a year. *In re agilon health, inc. Securities Litigation*, No. 1:24-cv-0297; *In re agilon health, inc. Shareholder Derivative Litigation*, No. 1:24-cv-00531. The Court is not convinced by Plaintiff's argument that this means little. (Doc. 28 at 16). Instead, between consideration of the dockets and his 89-page order on motions to dismiss in the latter, Judge Ezra has a comprehensive understanding of events fundamental to Plaintiff's Complaint. *See In re agilon health, inc. Sec. Litig.*, No. 1:24-CV-297-DAE, 2025 WL 2388183 (W.D. Tex. Aug. 15, 2025); *cf. Hamilton Cnty. Ohio v. Hotels.com, L.P.*, No. 1:10-CV-668, 2011 WL 14369, at *3 (S.D. Ohio Jan. 3, 2011) (noting the "inherent value" in a district judge's acquisition of familiarity with factual predicates underpinning the case to be transferred). "No public interest is served by having this Court duplicate the efforts" of Judge Ezra. *Commerzbank AG v. U.S. Bank Nat'l Ass'n*, No. 1:15-CV-818, 2016 WL 3255071, at *5 (S.D. Ohio June 14, 2016); *see also Ltd. Serv. Corp.*, 2010 WL 2105362, at *5 (finding transfer justified where "a great amount of duplicative effort would be required for this Court to draw even with [the judge presiding over the first case] in his knowledge of the issues"). All that would invite is inconsistent rulings on everything from discovery issues to dispositive motions.

As a last note, Plaintiff's suggestion that the public would be best served by transferring the Texas cases to this District holds no water. That question is not before this Court.

12

\*\*\*

All told, the private and public factors considered under 28 U.S.C. § 1404, and the interests of justice, weigh in favor of transferring this case to the Western District of Texas. And even if they didn't, transfer is proper under the first-to-file rule. Accordingly, as an exercise of the Court's broad discretion, the Court **GRANTS** Defendants' Motion.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Transfer Venue (Doc. 8) is **GRANTED**. This case is **TRANSFERRED** to the United States District Court for the Western District of Texas, Austin Division.

IT IS SO ORDERED.

Date:   January 14, 2026                                    /s/ Kimberly A. Jolson
                                                            KIMBERLY A. JOLSON
                                                            UNITED STATES MAGISTRATE JUDGE